UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JASON DUNKELBERGER,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN STORY, STATE MACHINE SHOP SUPERVISOR AT SD STATE PENITENTIARY; IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; MARCUS DITSWORTH, STATE, TEMP. SUPERVISOR AT SDSP MACHINE SHOP; IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND JOHN DOES, UNKNOWN EMPLOYEES OR OTHERS TO BE KNOWN; IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;<br><br>Defendants. | Case 4:20-CV-04086-LLP<br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS STORY AND DITSWORTH'S MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants John Story and Marcus Ditsworth (hereinafter "Defendants," "Story," "Ditsworth" or "Story and Ditsworth"), by and through their undersigned attorneys of record, and hereby submit the following Brief in support of these Defendants' Motion for Summary Judgment.

## INTRODUCTION

Plaintiff asserts that his constitutional rights were violated by the Defendants in that Defendants failed to protect Plaintiff from imminent risk of serious bodily harm and in doing so were deliberately indifferent. Plaintiff's claim fails as a matter of law and alternatively, his claims are barred by the doctrine of qualified immunity.

## STATEMENT OF THE FACTS

On June 13, 2017, Dunkelberger was cutting metal gussets in the South Dakota State Penitentiary machine shop with a Cincinnati metal shear when two of his fingertips were caught in the shear's depressor and severed. *See* Statement of Undisputed Material Facts ¶ 8 (hereinafter "SUMF"). Dunkelberger was immediately escorted to medical services at the South Dakota State Penitentiary and eventually transported to Avera in Sioux Falls for surgery and further treatment. SUMF ¶ 9.

At the time Dunkelberger suffered his injury, the metal shop had a sign posted detailing shop policy which stated: "Attention: no one is authorized to operate any machine without being fully trained and signed off on that specific unit. No exceptions! – Shop Supervisor – ". SUMF ¶ 10. The sign requiring training was in place at the time Dunkelberger was injured. The sign was located in close proximity to the machine Dunkelberger was injured upon. SUMF ¶ 11. The Cincinnati metal shear had two manufacturers warnings and a third warning procedure placed on the front of the machine by South Dakota State Penitentiary metal shop staff. SUMF ¶¶ 12-15. All warnings were in place at the time of Dunkelberger's injury. *Id.*

The machine shop equipment safety instructions posted on the front of the Cincinnati metal shear identified both safety procedures and operational procedures. *Id.* The instructions, which are located approximately 18 inches from the on/off switch for the Cincinnati metal shear are as follows:

2

Safety Procedures:
1.    Safety glasses.
2.    Clear deck of all debris.
3.    Clear spillway of all debris.
4.    Clear floor and machine of debris.
5.    **Keep fingers clear of the depressors and blades**.

Operational Procedures:
1.    Obey material thickness limits!!!
            Cincinnati –
            1/4 inch max.
            Wisong – 12 ga. max.
2.    Make sure machine is on before pressing the cut bar.
3.    Check back gauge for clearance.
4.    DO not insert material before turning on machine.
5.    DO not hold onto small pieces which are not under a depresser.
6.    Make sure everyone is clear behind the machine.
7.    Clear spillway of scraps!!!
            If you are not trained on this machine DO NOT operate!!!

SUMF ¶ 13 (emphasis added).

At the time Dunkelberger was injured, an original equipment manufacturer warning sign

was present on the front of the Cincinnati press approximately 24 inches from the on/off switch

for the machine. SUMF ¶ 14 That warning sign reads as follows:

DANGER
To reduce the possibility of injury . . .
**DO NOT PLACE YOUR HANDS BETWEEN THE KNIVES OR
BENEATH HOLD DOWNS.**
DO NOT PLACE YOUR HANDS BETWEEN MATERIAL BEING
SHEARED AND SHEAR TABLE.
ALWAYS READ AND UNDERSTAND THE OPERATION,
MAINTENANCE AND SAFETY MANUAL BEFORE OPERATING
OR SERVICING THIS SHEAR.

SUMF ¶ 14 (emphasis added).

3

On the opposite side of the Cincinnati press an original equipment manufacturer safety guidelines list was posted on the metal shear and was present at the time Dunkelberger severed his fingers. SUMF ¶ 15. The safety guideline's warning read as follows:

> Safety guidelines.
> Shear
> - Read and understand the operation and safety manual.
> - Know how to use the operator controls and modes of operation.
> - Operate only with safeguard properly installed.
> - Know the set up and proper method of operation.
> - Test all the required operator control stations and modes of operation before each shift, each job run and after each break.
> - Make certain the piece part will be clamped by enough hold downs to avoid plate "tip up".
> - Make certain hold down pressure is set according to the manual – avoid plate tip up".
> - Do not shear material that will "tip up" when being cut.
> - **Do not place your hands between the knives or under the hold downs**.
> - Do not place your hands between material being sheared and the shear table.
> - Use hand tools for small or narrow piece parts.
> - Make certain everyone is clear of front and rear of shear before operating.
> - Turn "off" or lock out operator controls when not operating shear.
> - When you leave the shear:
>   - Turn "off" or lock out operator controls.
>   - Turn the power "off".

SUMF ¶ 15 (emphasis added).

At all times Dunkelberger was working in the South Dakota State Penitentiary machine shop he had leather work gloves issued by the machine shop. SUMF ¶ 16. Dunkelberger's fingers were severed when he placed them underneath the hold downs (also known as depressors) warned of on the original equipment manufacturer's warning and the South Dakota State Penitentiary metal shop warning. SUMF ¶ 17.

Neither Story nor Ditsworth instructed Dunkelberger to cut the gussets he was cutting when he was injured. Another inmate named Troy Hause instructed Dunkelberger to use the metal shear. SUMF ¶ 18. Dunkelberger did not inform Marcus Ditsworth that he was not trained on the metal shear. SUMF ¶ 19. Dunkelberger admitted that Ditsworth did not know he had not been trained to operate the metal sheer. SUMF ¶ 20. Neither Story nor Ditsworth instructed Dunkelberger to use the metal shear. *Id.* Prior to suffering his injury, Dunkelberger had used the metal shears to cut approximately 20 other metal gussets. *See* p. 48 line 25, p. 49 lines 1 through 13 of Dunkelberger deposition excerpts attached to the Affidavit of Doug Abraham as Exhibit 4. Neither Story nor Ditsworth are aware of any prior inmate injuries while using the metal shear. SUMF ¶ 22. The shear was operating properly, with all guards in place at the time of Dunkelberger's injury.

## LEGAL STANDARD

"Summary judgment is appropriate if, taking the facts in a light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Jones v. Minn. Dep't. of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). "To avoid summary judgment, the nonmovant must make a specific showing on every essential element of its case on which it bears the burden of proof." *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1091 (8th Cir. 1992).

In addition, the nonmovant cannot defeat summary judgment unless "the alleged factual dispute [is] 'material to an essential element of the specific theory of recovery at issue.'" *Dico, Inc. v. Amoco Oil Co.*, 340 F.3d 525, 528 (8th Cir. 2003) (quoting *Get Away Club, Inc. v.*

*Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)). A genuine issue of material fact exists if there is a dispute about a fact material to the outcome of the case, the dispute is genuine and a reasonable jury could return a verdict for either party. *Id.* (citing *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)). Summary judgment is not a disfavored procedural technicality, but it is instead "an integral part of the Federal Rules as a whole . . . designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## ARGUMENT

### I.    Deliberate Indifference.

The Eighth Circuit Court of Appeals has determined the appropriate standard to analyze a claim by an inmate in relation to an injury within the context of a prison work assignment is the deliberate indifference standard. *See Ambrose v. Young*, 474 F.3d 1070, 1076-77 (8th Cir. 2007). The Eighth Circuit specifically held "In the prison work assignment context, prison officials are deliberately indifferent when they knowingly compel 'an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful.'" *Id.* at 1077 quoting *Sanchez v. Taggart*, 144 F.3d 1154, 1156 (8th Cir. 1998). Dunkelberger's claim is analyzed under the Eighth Amendment's prohibition against "cruel and unusual punishment" as such "applies to conditions of confinement, and prison work assignments fall under the ambit of conditions of confinement." *See Id.* citing *Rhodes v. Chapman*, 454 U.S. 337, 345-47, 101 S. Ct. 2392 (1981); *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993).

"To prove an Eighth Amendment violation in the context of a work assignment, plaintiff must demonstrate that he was subjected to a serious risk of harm, and that defendants were

deliberately indifferent to that risk." *See Story v. Hobbs*, 2013 U.S. Dist. LEXIS 19957 at

*8 (E.D. Arkansas 2013).  Here, in order to sustain a violation of his Eighth Amendment rights,

Dunkelberger must allege sufficient facts showing that (1) the alleged violation is objectively

and sufficiently serious, and (2) defendants acted with a sufficiently culpable state of mind.  *See*

*Kulkay v. Roy*, 847 F.3d 637, 642-3 (8th Cir. 2017).

> An alleged violation is "objectively [and] sufficiently serious" when the inmate
> "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*
> (citation and quotation marks omitted); *accord Nelson v. Shuffman*, 603 F.3d 439,
> 446 (8th Cir. 2010). We have found this first requirement satisfied in various
> contexts. *See, e.g., Nelson*, 603 F.3d at 447 (holding an inmate faced a substantial
> risk of serious harm when officials assigned him to share a room with an inmate
> known to have sexually assaulted other inmates); *Irving v. Dormire*, 519 F.3d
> 441, 445, 448-49 (8th Cir. 2008) (finding a sufficient risk of harm when a
> correctional officer made verbal death threats to an inmate); *Simmons v. Cook*,
> 154 F.3d 805, 807-08 (8th Cir. 1998) (finding a sufficient risk of harm when
> officials placed two paraplegic inmates in solitary confinement for thirty-two
> hours without access to food and medical care).

*Id.* The second portion of the test, the "subjective inquiry" is "analyzed in light of the specific

claim raised." *Id.* at 643 quoting *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008).

> In a case challenging the conditions of confinement, the requisite state of mind is
> "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834
> (quoting *Wilson*, 501 U.S. at 302-03). "An official is deliberately indifferent if he
> or she actually knows of the substantial risk and fails to respond reasonably to it."
> *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). This requirement "follows from
> the principle that 'only the unnecessary and wanton infliction of pain implicates
> the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at
> 297).

> This court has repeatedly held mere negligence or inadvertence does not rise to
> the level of deliberate indifference. *See, e.g., Schaub v. VonWald*, 638 F.3d 905,
> 914-15 (8th Cir. 2011) ("Deliberate indifference is equivalent to criminal-law
> recklessness, which is 'more blameworthy than negligence,' yet less blameworthy
> than purposefully causing or knowingly bringing about a substantial risk of
> serious harm to the inmate." (quoting *Farmer*, 511 U.S. at 835)); *Stephens v.
> Johnson*, 83 F.3d 198, 200-01 (8th Cir. 1996); *Estate of Rosenberg v. Crandell*,

56 F.3d 35, 37 (8th Cir. 1995) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

In contrast to negligence, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993). "In the prison work assignment context, prison officials are deliberately indifferent when they knowingly compel 'an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful.'" *Ambrose*, 474 F.3d at 1077 (quoting *Sanchez v. Taggart*, 144 F.3d 1154, 1156 (8th Cir. 1998)). The defendant-official's state of mind "must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" *Schaub*, 638 F.3d at 915 (quoting *Lenz v. Wade*, 490 F.3d 991, 993 n.1 (8th Cir. 2007)).

*Id.* at 643.

In the *Kulkay* decision, the Eighth Circuit Court of Appeals affirmed dismissal of an action brought by and inmate injured while using a saw that had guards removed and a history of inmate injuries. *See generally id.*

Unlike in *Kulkay*, the SDSP machine shop metal shear was working as designed with all safety guards installed. Dunkelberger has not alleged prior injuries or removal of safety equipment. Nor was Dunkelberger assigned to use the metal shear. Under these facts and the applicable law, Dunkelberger cannot satisfy the first portion of the test as his voluntary work on a machine he was untrained to use, and used contrary to SDSP policy, does not constitute a violation that is objectively and sufficiently serious. *See id.* at 642.

Further, Dunkelberger was provided safety equipment in the form of safety glasses and leather work gloves. *Supra.* Dunkelberger was not directed by either Defendant to use the metal shear upon which he was injured. *Supra.* Dunkelberger claims he was not trained to operate the subject metal shear. Contradicting records seem to indicate that Dunkelberger was in fact trained

8

on the metal shear. In either event, Dunkelberger was not directed to use the metal shear and had he not been trained on the shear, he was violating known and clearly posted policy of the SDSP metal shop that prohibited the use of equipment by inmates who are not trained to operate the respective piece of equipment. *Supra.*

Dunkelberger admits that neither Story nor Ditsworth directed him to use the metal shear nor were they even aware that he was utilizing it. *Supra.* Dunkelberger was directed to assist another inmate with a project. That inmate asked Dunkelberger to cut metal gussets with the Cincinnati metal shear. Dunkelberger admits he did not inform Ditsworth that he was untrained on the piece of equipment and alleges that he did not read the clear, highly legible safety warnings posted both on the front of the metal shear and near the on/off switch which cautioned all operators to "keep fingers clear of depressors and blade." *See* SUMF ¶ 19. Multiple warnings advised Dunkelberger to keep his hands and fingers clear of the depressors. He simply misused a machine that was functioning properly.

Under these facts and the standard applied in *Kulkay*, Dunkelberger clearly fails to satisfy the subjective portion of the test. Under facts and conditions that were far less favorable to the Defendants than those present here, the Eighth Circuit held:

> The absence of certain safety equipment or training and the occurrence of similar injuries does not impute Faribault officials with knowledge of these conditions or the risk of harm they represent. To show deliberate indifference via circumstantial evidence, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; accord *Young*, 508 F.3d at 873. Kulkay's allegations are not enough to show officials had actual knowledge of the allegedly dangerous conditions in the workshop or that they willfully overlooked those dangers.

*Id.* at 644. The same result must hold true here. Multiple cases involving prison industries injuries further mandate the same result. *See Bibbs v. Armontrout*, 943 F.2d 26, 26-27 (8th Cir. 1991)(inmate who lost fingertips in unguarded gears due to removal of safety guards failed to produce evidence sufficient to satisfy deliberate indifference standard); *see also Warren v. Missouri*, 995 F.2d 130 (8th Cir. 1993); *Stephens v. Johnson*, 83 F.3d 198, 199-200 (8th Cir. 1996)(failure to provide safety training and equipment alone is insufficient to establish deliberate indifference claim).

II.    <u>Qualified Immunity Precludes Dunkelberger's Claims.</u>

The Defendants Story and Ditsworth maintain they are entitled to summary judgment in that Dunkelberger cannot make a sufficient deliberate indifference showing to avoid entry of summary judgment. However, should the Court look beyond the deliberate indifference argument, it is clear the Defendants are shielded by qualified immunity.

> Qualified immunity still protects officers accused of violating a right if the right is not clearly established. For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'

*Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006) quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002).

> Government officials are entitled to qualified immunity for discretionary decisions unless they violate a clearly established constitutional right. *See Gordon ex rel Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' *See Vaughn*, 438 F.3d at 852.

*Jones v. Minn. Dep't. of Corr.*, 512 F.3d, 478, 484 (8th Cir. 2008).

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by

qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in light of preexisting law the unlawfulness must be apparent.'

*Hope*, 536 U.S. at 739 quoting *Mitchell v. Forsyth*, 472 U.S. 511, 535, 86 L.Ed.2d 411, 105 S. Ct. 2806, n. 12; citing *Anderson*, 483 U.S. at 640. Essentially, the stated law in 2017 must have given the present Defendants fair warning that their alleged treatment of Dunkelberger was unconstitutional. *Hope,* 536 U.S. at 741.

As government officials, the Defendants here, when being sued in their individual capacities, possess qualified immunity from suits arising from the execution of their duties. *See Saucier v. Katz*, 522 U.S. 194, 201 (2001); *Hope*, 536 U.S. 730 (applying *Saucier* to state government officials). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Supreme Court has developed, and expressed preference for, a two-part test for application of a government official's qualified immunity from a § 1983 claim. The threshold question is whether, in viewing the facts in a light most favorable to plaintiff, the official's conduct has violated a constitutional right. *See Saucier*, 522 U.S. at 201. If a right has been violated, the question becomes whether the right was clearly established at the time of the violation and within the specific context of the case. *Id.* If a § 1983 plaintiff fails to establish either prong of the qualified immunity test, qualified immunity shields the officer from suit. *Id.* at 200-01. Of note, the official capacity claims did not survive screening.

A.    No constitutional violation occurred.

Defendants rely on the argument and authorities presented in Part I of this Brief, *supra*, to show that there has been no constitutional violation of Dunkelberger's rights as the conduct did not demonstrate deliberate indifference. In that respect, the Defendants are entitled to qualified immunity, and the Court need not address the second portion of this test.

B.    It was not clearly established that Dunkelberger's use of the metal shear under the conditions present in the SDSP machine shop was unlawful in light of the preexisting law.

Should the Court proceed to the second prong of the test, Dunkelberger's claims would certainly fail. "As the Supreme Court has explained, the purpose of [the second part of the] qualified immunity [test] is to ensure government officials 'are on notice their conduct is unlawful.'" *Sisney v. Reisch*, 674 F.3d 839, 843-44 (8th Cir. SD 2012) (quoting *Hope*, 536 U.S. at 739). "Whether the controlling legal principle has been clearly established is not to be determined at the most general level of legal abstraction." *Id.* (quoting *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998)). "Instead, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Thus, the 'salient question' for the court to ask is whether the stated law at the time gave the officials 'fair warning' their conduct was unlawful." *Id.* (quoting *Hope*, 536 U.S. at 741).

In order to demonstrate the right was clearly established to give fair warning, a § 1983 plaintiff must be able to point to either a controlling case from their jurisdiction, or a consensus of outside jurisdictions, establishing the right. *Wilson v. Layne*, 526 U.S. 603, 618 (1999). In the

12

absence of such case law, a reasonable officer cannot be expected to know that his actions violated a constitutional right. *Id.*

Here, there had not been a prior inmate injury concerning the subject Cincinnati metal shear. *See* Affidavit of John Story, ¶ 13. This is significant as the Eighth Circuit and district courts have dealt with a number of prison industries injury cases, some of which alleged dangerous equipment and improper training. *Supra.* Neither Story nor Ditsworth directed Dunkelberger to use the equipment that he alleges he had not received training in regard to. *Supra.* Further, the official machine shop policy, which was conspicuously posted on large metal signs, precluded inmates from using pieces of equipment that they had not received training in regard to. *Supra.* Thus, the present case does not involve an application of qualified immunity where a safety program has not been developed. The present case involves the application of qualified immunity in a case where an inmate deliberately disregarded the safety program and was injured on a piece of equipment in direct violation of known shop policy.

No established law would put the subject defendants on notice that their conduct constituted a constitutional violation as the right was not clearly established under the subject circumstances and the conduct complained of does not amount to an Eighth Amendment violation. Plaintiff has the obligation to produce a case evidencing the right at issue here was clearly established and the defendants submit such authority does not exist.

III.    Deliberate indifference to Dunkelberger's medical needs.

The Eighth Circuit Court Appeals has often addressed claims alleging prison officials have failed to provide adequate medical treatment and that such failure evidenced the "deliberate indifference to serious medical needs of prisoners" and such "constitutes the unnecessary and

13

wanton infliction of pain proscribed by the Eighth Amendment." *See Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) citing *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009).

Dunkelberger has asserted very limited claims that could potentially be construed as involving his medical needs. He was prescribed warm gloves and no one provided them to him. *See* Complaint. Neither Story nor Ditsworth were in any way involved in Dunkelberger's receipt of medical care. Story was not present when Dunkelberger was injured and Ditsworth immediately accompanied him to the medical department of the South Dakota State Penitentiary for care and turned over his custody to the medical department. *Supra*. To the extent that Story and Ditsworth were alleged to have been required to provide "warm gloves" neither Story nor Ditsworth were ever made aware of the prescription for warm gloves. *See* Story Affidavit ¶ 8, Ditsworth Affidavit ¶ 8. Story and Ditsworth both insured, during the time they were supervising the machine shop, that Dunkelberger had leather work gloves which were the only gloves available for issue within the machine shop. *See* Story Affidavit ¶ 7, Ditsworth Affidavit ¶ 7. Story and Ditsworth had no other authority or equipment to issue that could possibly construed within the prescription for "warm gloves." At the time the present action was commenced, neither defendant worked for the SDSP. Story had retired and Ditsworth had taken a new position with a private employer.

To succeed Dunkelberger must establish that Story and Ditsworth acted with deliberate indifference, which requires Dunkelberger to demonstrate that Ditsworth and Story knew of and disregarded an excessive risk to his health or safety. *See Letterman v. Does*, 789 F.3d, 856, 862 (8th Cir. 2015); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding "the official must both be aware of the facts from which the inference can be drawn and a substantial risk of

14

serious harm exists, and he must also draw the inference.") If knowledge is shown, the plaintiff must then show that the defendants "knew that their conduct was inappropriate in light of the risks to the prisoner." *Letterman*, 789 F.3d at 862 (quoting *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009)). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Pietrafeso v. Lawrence County, South Dakota*, 452 F.3d 978, 983 (8th Cir. 2006).

> In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health. This onerous standard requires a showing "more than negligence, more even than gross negligence," but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate."

*Thompson v. King*, 730 F.3d 742, 746-747 (8th Cir. 2013).

Significantly, deliberate indifference is "greater than gross negligence and requires more than mere disagreement with treatment decisions." *Id.* In evaluating whether a defendant deliberately disregarded a risk, the court considers the "actions in light of the information [the defendant] possessed at the time, the practical limitations of [the defendant's] position and alternative courses of action that would have been apparent to an official in that position." *Letterman*, 789 F.3d at 862. "Intentionally interfering with the treatment once prescribed" is a recognized variant of deliberate indifference. *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985).

Here, neither Story nor Ditsworth had any knowledge of the prescription, yet they provided leather gloves for Dunkelberger to wear while he worked in the machine shop. Ditsworth and Story both indicate via their affidavits that they had no other additional equipment that they were capable of issuing to Dunkelberger that could constitute "warm gloves."

15

Dunkelberger's need for warm gloves could hardly meet the standard of "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." Dunkelberger simply cannot show that any substantial risk of serious harm existed or that Ditsworth or Story were aware of it. Further, no excessive risk to Dunkelberger's health or safety has been alleged due to the absence of his "warm gloves." In this regard, Ditsworth and Story are both entitled to summary judgment as Dunkelberger cannot state even a *prima facie* case for deliberate indifference in regard to the provision of "warm gloves." Neither Story nor Ditsworth possessed the ability to provide more than the leather gloves that were provided to Dunkelberger and they are no longer employed at the South Dakota State Penitentiary such that injunctive relief could stand against them for the provision of the gloves.

For these reasons and those stated above, summary judgment in favor Story and Ditsworth is appropriate concerning any deliberate indifference claim in regard to medical care or the provision of gloves that the Court may construe as a claim for injunctive relief.

## CONCLUSION

Dunkelberger's allegations do not establish a constitutional violation. At worst, qualified immunity shields the defendants from liability. Under the applicable authority, summary judgment is appropriate.

16

Dated this 3rd day of September, 2021.

MAY, ADAM, GERDES & THOMPSON LLP


BY: _____
DOUGLAS A. ABRAHAM
Attorneys for Defendants Story and Ditsworth
503 South Pierre Street
P.O. Box 160
Pierre, South Dakota 57501-0160
Telephone: (605)224-8803
E-mail: daa@mayadam.net


## CERTIFICATE OF COMPLIANCE

In accordance with D.S.D. Civ. LR 7.1(B)(1), I certify that this Brief complies with the requirements set forth in the Local Rules. This Brief was prepared by using Microsoft Word 2016 and Times New Roman 12 point font. This Brief contains 4,856 words. I have relied on the software's word count to prepare this certificate.

_____
Douglas A. Abraham


## CERTIFICATE OF SERVICE

Douglas A. Abraham of May, Adam, Gerdes & Thompson LLP hereby certifies that on this the 3rd day of September, 2021, he mailed by United States mail, first class postage thereon prepaid, a true and correct copy of the foregoing Brief in the above-captioned action to the following at his last known address, to-wit:

Jason Dunkelberger, #21359
Mike Durfee State Prison
1412 Wood Street
Springfield, SD    57062

Douglas A. Abraham

18