UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JASON DUNKELBERGER,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN STORY, STATE MACHINE SHOP SUPERVISOR AT SD STATE PENITENTIARY; IN HIS INDIVIDUAL AND OFFICAL CAPACITY; MARCUS DITSWORTH, STATE, TEMP. SUPERVISOR AT SDSP MACHINE SHOP; IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,<br><br>Defendants. | 4:20-CV-04086-LLP<br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Jason Dunkelberger, filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court screened Dunkelberger's complaint, dismissing it in part and directing service upon defendants in part. Doc. 6. Specifically, Dunkelberger's Eighth Amendment failure to protect claim against John Story and Marcus Ditsworth in their individual capacities and in their official capacities for injunctive relief survived § 1915A screening, and his remaining claims were dismissed. *Id.* at 7. Defendants now move for summary judgment, Doc. 22, which this Court grants for the reasons below.

I. **Factual Background**

Dunkelberger, an inmate at the South Dakota State Penitentiary at the time of the events in question, was working in the State Penitentiary Machine Shop on June 13, 2017. Doc. 25-4 at 2. Story was the Machine Shop Supervisor, and it was his job to oversee the Machine Shop and train inmates to safely use equipment and machinery. Doc. 26 ¶¶ 1-2. Because Story was away

1

on medical leave, Ditsworth was acting as the temporary Machine Shop Supervisor on June 13, 2017. Doc. 26 ¶ 1; Doc. 27 ¶ 1. According to Dunkelberger, Ditsworth told Dunkelberger to follow the direction of Troy Hause, an inmate who served as the lead in the Machine Shop, so that they could finish a project by the end of the day. Doc. 29 at 1; Doc. 25-4 at 4. Dunkelberger claims that the standard practice in the Machine Shop is for the supervisor to provide a project and a deadline and for the inmates to figure out how to complete the project by that deadline. *See* Doc. 25-4 at 2.

On June 13, 2017, Hause directed Dunkelberger to cut metal into gussets. *Id.* at 2-3. Dunkelberger told Hause that he had not been trained on the Cincinnati brand metal shear needed to cut the metal, but Hause told him that he could complete his training later. *Id.* at 3. In his deposition, Dunkelberger testified that he would be written up and sent to the segregated housing unit if he refused to do the work that was assigned to him. *See id.* Dunkelberger did not tell Ditsworth that he was not trained on the metal shear or that Hause had directed him to use a machine that he was not trained on. *Id.* at 4-5. Dunkelberger successfully cut approximately 20 gussets, but he then caught his fingers underneath a cylinder that held the metal in place. *Id.* at 5, 7-8. The machine severed the tips of Dunkelberger's index and middle fingers on his left hand. *Id.* at 5. Dunkelberger was taken to medical services at the State Penitentiary, then transported to an Avera medical facility. *Id.* at 8.

Dunkelberger and the defendants disagree as to whether the Cincinnati metal shear had warning labels in place on the day of the accident. *See* Doc. 24 ¶¶ 12-15; Doc. 30 at 3-4. Defendants originally submitted black and white photographs from shortly after the accident in which two warning labels on the front of the machine are difficult to see, as well as clearer photographs taken in August of 2021 that show the two warning labels, a third warning label

regarding pinch points, and a printed list of safety instructions near the machine's on/off switch. Doc. 25-2 at 1; Doc. 25-3 at 1-5. Dunkelberger alleged that the 2017 photographs show no warning labels, and defendants then submitted the 2017 photographs in color, which more clearly show the two warning labels and list of safety instructions. *See* Doc. 30 at 3-4; Doc. 34-1 at 1, 3. Defendants agree that the third warning label regarding pinch points was added following Dunkelberger's injury. Doc. 32 ¶ 10.

Dunkelberger and the defendants also dispute whether a sign warning workers not to use machinery on which they had not been fully trained was in place in the Machine Shop on the day of the accident. *See* Doc. 24 ¶¶ 10-11; Doc. 30 at 3-4. Defendants submitted photographs of the warning sign from August 2021, and Story testified in his affidavit that the sign was present on the day of the accident. Doc. 25-3 at 6-7; Doc. 26 ¶ 10. Dunkelberger argues that there are no photographs of the warning sign from July 2017, but he does not specifically claim that the warning sign was not present on the day of the accident. *See* Doc. 30 at 3-4.

In his complaint, Dunkelberger alleged that he complained of pain in his fingers at Health Services on September 28, 2017, and on October 11, 2018. Doc. 1 at 9. He alleged that on December 11, 2018, Dr. Kathlyn Drexler of Avera Medical Group Orthopedics and Sports Medicine recommended that he be provided with warm gloves to help protect his severed fingertips. *Id.* at 9-10. He also alleged that he has not been provided these gloves. *Id.* at 10.

## II. Legal Background

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A summary judgment motion must be supported by evidence on the record, which may include affidavits or declarations based upon personal knowledge. Fed. R.

3

Civ. P. 56(c). The non-moving party is entitled to the benefit of having all reasonable inferences resolved in his or her favor, but the non-moving party must present specific facts showing a genuine issue for trial. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (citation omitted). That is, a non-moving party must present "sufficient probative evidence" capable of supporting a finding in his or her favor, not "mere speculation, conjecture, or fantasy." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985)).

The underlying substantive law identifies which facts are material for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### III. Legal Analysis

Dunkelberger brings an Eighth Amendment failure to protect claim against Story and Ditsworth in their individual capacities and in their official capacities for injunctive relief.[1] Doc.

---

[1] This Court did not construe Dunkelberger's allegations regarding the State Penitentiary's failure to provide him with warm gloves as a separate Eighth Amendment deliberate indifference to serious medical needs claim in its screening order. *See* Doc. 6 at 2-3, 7. Thus, this order will treat Dunkelberger's request for warm gloves as a form of injunctive relief sought as a remedy for his failure to protect claim rather than a separate claim in its own right, given that Dunkelberger has made no claims that Story or Ditsworth were responsible for his medical care. *See* Doc. 23 at 13-16.

4

6 at 7. To prevail on an Eighth Amendment claim for failure to protect, "a plaintiff must show that a defendant was *personally involved* in the alleged deprivation of rights and *deliberately interfered* with those rights." *Kenyon v. Dooley*, 2014 WL 3700878, at *3 (D.S.D. July 25, 2014). To establish deliberate interference, a plaintiff "must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." *Id.* (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

A prison official's failure to act despite knowledge of the risk to an inmate can amount to deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Coleman*, 114 F.3d at 786 (citing *Farmer*, 511 U.S. at 842). To show deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Kenyon*, 2014 WL 3700878, at *3 (alterations in original) (quoting *Coleman*, 115 F.3d at 785). Mere negligence does not constitute deliberate indifference. *Warren v. Missouri*, 995 F.2d 130, 131 (8th Cir. 1993).

The Eighth Circuit Court of Appeals has applied the deliberate indifference standard to claims of unsafe prison working conditions. *Ambrose v. Young*, 474 F.3d 1070, 1076 (8th Cir. 2007). "In the prison work assignment context, prison officials are deliberately indifferent when they knowingly compel 'an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful.' " *Id.* at 1077 (quoting *Sanchez v. Taggart*, 144 F.3d 1154, 1156 (8th Cir. 1998)).

Defendants argue that the alleged deliberate indifference on the part of Story and Ditsworth is less than that in *Kulkay v. Roy*, in which the Eighth Circuit found that the

5

defendants were not deliberately indifferent when the plaintiff injured himself after working with a beam saw. *See* Doc. 23 at 9-10 (citing *Kulkay v. Roy*, 847 F.3d 637, 644 (8th Cir. 2017)). In *Kulkay*, the plaintiff had no formal training from officials on the beam saw but received instruction from an experienced inmate. 847 F.3d at 641. The beam saw had plastic safety guards, but the plaintiff alleged that defendants never installed the safety guards. *Id.* The Eighth Circuit found that even had the plaintiff been assigned to use a beam saw lacking safety guards without formal training, he had not shown the defendants were deliberately indifferent to the risk posed because he had not shown that they had actual knowledge of the risk. *Id.* at 644. The *Kulkay* court found that "[t]he absence of certain safety equipment or training and the occurrence of similar injuries [did] not impute [defendants] with knowledge of these conditions or the risk of harm they represent[ed]." *Id.*

    Here, defendants argue that Story and Ditsworth were similarly unaware of Dunkelberger's lack of training or the risk of harm posed to Dunkelberger. Doc. 23 at 8-9. To the extent that the risk posed to Dunkelberger was his use of the metal shear without training, defendants are correct that Story and Ditsworth were not aware that Dunkelberger was using the metal shear and thus could not have been deliberately indifferent to that risk. *See id.* But Dunkelberger argues that Machine Shop Supervisors only "give [inmates] information on what needs to be built and when it needs to be done" without providing any information as to what tools or machines should be used or not used. Doc. 30 at 9. Thus, Dunkelberger argues that Story and Ditsworth were deliberately indifferent to the risk posed to Dunkelberger by their placing Hause, an inmate, in charge of directing Dunkelberger as to the work to be done. *See id.* at 7, 9.

    Dunkelberger must show that defendants knowingly compelled him to perform labor "dangerous to his life or health[.]" *Ambrose*, 474 F.3d at 1077 (quoting *Sanchez*, 144 F.3d at

1156). Given Dunkelberger's belief that he would be punished if he failed to complete the work assigned to him by Hause, he successfully alleges that he was compelled to do work. *See* Doc. 25-4 at 3. He also successfully alleges that the labor in question was dangerous to his life or health because Hause directed him to do dangerous work with a machine that he was not trained on. *See id.* But Dunkelberger makes no showing that Story or Ditsworth *knowingly* compelled him to do the dangerous labor because Dunkelberger provides no evidence that Story or Ditsworth knew that Hause would direct him to use a machine he was not trained on or otherwise had knowledge that placing Hause in charge would expose Dunkelberger to a substantial risk of serious harm. *See id.* at 2-5. Thus, while Dunkelberger argues that Ditsworth compelled him to perform dangerous labor by requiring him to work at Hause's direction, he cannot show that Ditsworth did so knowingly because he fails to show that Ditsworth had any knowledge or awareness of the danger. *See id.*

Dunkelberger argues that "there is substantial risk every time [he] uses any machine in [the Machine Shop,]" because the Machine Shop is inherently dangerous. Doc. 30-1 at 20. Many industrial machines, including this one, are inherently dangerous, but this does not mean that every use of industrial machines poses a substantial risk of serious harm or that every instance of an inmate's improper use of industrial machines constitutes deliberate indifference on the part of a supervising prison official. *See Kulkay*, 847 F.3d at 644 (citing *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1993) (holding that unsafe prison working conditions alone do not suffice for a showing of deliberate indifference unless prison officials knew of or willfully overlooked the unsafe conditions); *see also Choate v. Lockhart*, 7 F.3d 1370, 1375-76 (8th Cir. 1993). Again, deliberate indifference in the prison work context occurs when prison officials knowingly compel an inmate to perform work that is "beyond the inmate's strength, dangerous to his or her

life or health, or unduly painful." *Ambrose*, 474 F.3d at 1077 (quoting *Sanchez*, 144 F.3d at 1156). When a prison inmate alleges an injury from the use of an industrial machine that is inherently dangerous, he or she must show more than a lack of proper training and safety equipment to make a showing of deliberate indifference. *See Kulkay*, 847 F.3d at 644 (finding that "the absence of safety equipment or procedures and an awareness of similar injuries . . . at most amount[ed] to negligence" and was "insufficient to state a claim under the Eighth Amendment"). Thus, the inherent danger of this industrial machine does not render Story and Ditsworth's order that Dunkelberger work in the Machine Shop itself to be deliberate indifference. There is no showing that either Story or Ditsworth ordered Dunkelberger to work on the machine in question or that they knew Hause would order Dunkelberger to do so.

Dunkelberger argues that Story and Ditsworth failed to supervise and train their subordinates. Doc. 30-1 at 17 (citing *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)). "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka*, 244 F.3d at 635 (citing *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). Instead, a supervisor is liable if:

> he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

*Id.* (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). This Court is not certain that Hause, an inmate, was acting as an "employee" for supervisory liability purposes at the time of the incident. Regardless, Dunkelberger makes no showing that Story or Ditsworth had notice that "the training procedures and supervision were inadequate and likely to result in a constitutional violation[,]" because he makes no showing that Story or Ditsworth was aware of

the risk of harm posed by placing Hause in charge. *See id.* (quoting *Andrews*, 98 F.3d at 1078); Doc. 30-1 at 17-21. Thus, defendants are entitled to summary judgment on Dunkelberger's failure to protect claims. Defendants' motion for summary judgment, Doc. 22, is granted.

Accordingly, it is

ORDERED:

1. That Defendants' motion for summary judgment, Doc. 22, is granted.

DATED July 20th, 2022.

ATTEST:
MATTHEW W. THELEN, CLERK

BY THE COURT:

Lawrence L. Piersol
United States District Judge